ALEXANDER MORRIS *et al.* v. JAMES BUNYAN.

**No. 9801.**

1. SHAWNEE COUNTY CIRCUIT COURT—*act creating, constitutional.* Chapter 83 of the Laws of 1891, creating the Circuit Court of Shawnee County, is constitutional and valid.

2. ———— *had power after term to correct erroneous journal entry of judgment.* The Circuit Court of Shawnee County, on due notice to the opposing party, had power to correct an erroneous journal entry of a judgment rendered by it, after the term at which the judgment was rendered, so as to make it conform to the judgment in fact rendered.

3. ABSENCE OF SEAL—*on original writ not presumed in favor of plaintiff in error from mere fact of its omission from copy of writ in record.* Where the validity of process issued out of a court of record is challenged in this court on the ground of the absence of a seal, the record must affirmatively show that the seal was not on the writ; and the mere fact that there is no scroll, or word "seal," on the copy, at the place where the seal is usually affixed, is insufficient to show the absence of the seal, when opposed to a recital in the writ itself that the seal was affixed.

Error from Shawnee District Court. Hon. Z. T. Hazen, Judge. Opinion filed May 8, 1897. *Affirmed.*

*F. G. Hentig,* for plaintiffs in error.

*D. C. Tillotson,* for defendant in error.

ALLEN, J. The purpose of this proceeding is to reverse an order of the District Court of Shawnee County confirming a sale of real estate, made under an order of sale issued by the clerk of the District Court of Shawnee County, based on a judgment of the Circuit Court of Shawnee County. The judgment in fact rendered by the Circuit Court in favor of Bunyan against Morris was for $3,237.76; but, in some unexplained manner, the journal entry prepared was changed, and entered on the record as a judgment for thirty-two dollars only. A stay of execution for ten months was allowed. Before the expiration of this

time, a transcript of the judgment was filed with the clerk of the District Court. After the expiration of the stay, an order of sale was issued. The mistake in the amount of the judgment was then discovered and the order of sale returned. On motion of Bunyan, and due notice to the opposing parties, the Circuit Court corrected the journal entry of the judgment so as to make it conform to the order actually made. A copy of the amended journal entry showing a judgment in favor of Bunyan for $3,237.76, was then filed in the office of the clerk of the District Court. Thereupon, an order of sale was issued, and the mortgaged property sold to Bunyan for the sum of twenty-six hundred dollars. Motions to confirm and to set aside the sale were filed. The court overruled the motion to set aside, and sustained the motion to confirm the sale. In the action in the Circuit Court, Sarah M. Evans was plaintiff; and she recovered a judgment against Morris for $1,825 and costs, and for a foreclosure of her mortgage on the same property, which was adjudged to be a lien inferior to that of Bunyan.

The first and principal question discussed in the brief of counsel for the plaintiff in error is, whether the Circuit Court of Shawnee County was a constitutional court having power to render a judgment. This court was created by chapter 83 of the Laws of 1891, and given concurrent original jurisdiction with the District Court of all civil actions except actions for divorce. Section 17 of the act provides :

" No judgment or execution docket shall be kept by the clerk of the circuit court until otherwise provided by law. Immediately upon final judgment being rendered in any cause determined in the circuit court, execution whereof shall not be duly stayed by order of such court, the clerk of the circuit court shall transcribe such final judgment and duly certify the same to the clerk of the district court of said county, who

shall immediately note or enter such judgment upon the appearance docket and judgment docket of his court as if such judgment had been rendered in the district court; and such judgment shall be a lien upon the property of the judgment debtor from the same time and in like manner and effect as if the same had been rendered in the district court, and all process for the enforcement of any such judgment shall be issued and returnable, and subsequent proceedings thereon had, in like manner and effect as if such judgment had been rendered in and by the district court.''

The contention of counsel that the Legislature has not power to provide for two judges of a district court may be conceded. But it does not follow that it has not power to establish another court having concurrent jurisdiction with the district court in one or all classes of cases. Section 6, of article 3, of the Constitution, reads : ''The district courts shall have such jurisdiction in their respective districts as may be provided by law.'' Section 1, of the same article, vests the judicial power of the state in the Supreme Court, district courts, probate courts, justices of the peace, and such other courts inferior to the Supreme Court as may be provided by law. No restriction is anywhere imposed on the creation of courts inferior to the Supreme Court. The Legislature is left free, not only to create such courts inferior to the Supreme Court as it deems best, but also to confer so much, or so little, jurisdiction on them as it sees fit. This power has been exercised in the creation of the Circuit Court of Shawnee County ; its predecessor — the Superior Court; the Court of Common Pleas of Wyandotte County ; and the Court of Common Pleas of Sedgwick County ; each having concurrent jurisdiction with the district court in certain classes of cases. The Constitution does not prohibit the Legislature from conferring concurrent jurisdiction on two or more courts, and no good reason is ap-

1. Act creating court constitutional.

parent, opposed to the policy, even, of doing so. The Legislature has seen fit to give justices of the peace and district courts concurrent jurisdiction in many cases, and its power to do so is not open to doubt. But the further objection is urged that a court has been created without power to issue final process; that the judge of the Circuit Court is, in effect, but a referee for the District Court, to which all judgments must be returned for execution. It is said that final process for the enforcement of its judgments is indispensable to the creation of a valid court. That final process is essential to the effectual exercise of judicial power, cannot be doubted; but that courts may not be created to hear and determine causes, leaving the enforcement of their judgments unprovided for, is not so clear. However this may be, the act under consideration has provided final process for the enforcement of the judgments of the Circuit Court. It is true, that final process is not to be issued directly by the clerk of the Circuit Court. · The Legislature, for reasons it deemed sufficient, has required that all executions on judgments of either the circuit or the district court shall be issued from the same office — that of the clerk of the district court. No valid constitutional objection is opposed to this course. The practice of issuing executions out of the district court on judgments rendered elsewhere is not a novel one. Provisions have long been in force authorizing transcripts and abstracts of judgments of justices of the peace to be filed in the office of the clerk of the district court and execution to issue thereon with like force as on judgments of the district court. Executions issued thereon, and sales of land belonging to the debtors to satisfy the judgments which could not have been made under process issued directly by the justices of the peace, have

been held valid. *Treptow v. Buse*, 10 Kan. 170; *Rahm v. Soper*, 28 id. 529. The question as to the power of the Legislature to appoint commissioners to assist in the disposition of cases in the Supreme Court, which was discussed in the case of *C. K. & W. Rld. Co. v. Town-site Company* (42 Kan. 104), is quite a different one from that under consideration in this case; for the Constitution fixes the number of Justices of the Supreme Court, and permits the Legislature to create only courts inferior to the Supreme Court. The Circuit Court of Shawnee County ranked, in jurisdiction, below that of a district court; for it was excluded from jurisdiction in actions for divorce, and in criminal actions, as well as some other classes of cases. The objections to the constitutionality of the act creating the Circuit Court are not good.

The power of the court to correct clerical errors in entries of judgments is undoubted; and this power continued after the certification of the judgment to the District Court. *In re Black*, 52 Kan. 64; *In re Wolf*, 52 id. 366. The act of the clerk of the Circuit Court in prematurely transcribing and certifying the judgment to the District Court, did not, and could not, affect either the rights of the parties or the jurisdiction of the court over the judgment.

2. Court had power to correct erroneous journal entry.

The copy of the order of sale contained in the record shows neither an impression of a seal nor a scroll with the word "seal;" but it concludes with the words, "Witness my hand and the seal of the District Court, affixed at my office in the city of Topeka," over the date and signature of the clerk. There is nothing else in the record indicating whether a seal was or was not, in fact, impressed on the original writ. Where a question is raised as to the validity of a writ on

the ground that it was issued without a seal, it is necessary that the record show affirmatively the absence of the seal; and this court will not presume that the seal was lacking, merely because the word "seal" or a scroll with a pen is omitted, when the writ itself refers to a seal as being affixed to it.  *Dexter v. Cochran*, 17 Kan. 447.

3. Absence of seal not presumed.

We perceive no error in the order of the court confirming the sale, and it is affirmed.